1

2

3

4

5

6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

7

8

9

10

11

12

COLONY INSURANCE COMPANY,

Plaintiff,

v.

COLORADO CASUALTY INSURANCE
COMPANY,

Defendant.

Case No. 2:12-cv-01727-RFB-NJK

**ORDER**

Defendant Colorado Casualty Insurance Co.'s
Motion for Summary Judgment (ECF No. 36)

Plaintiff Colony Insurance Co.'s Motion for
Summary Judgment (ECF No. 38)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      INTRODUCTION

        This case is before the Court on Defendant Colorado Casualty Insurance Co.'s
("Colorado") Motion for Summary Judgment (ECF No. 36) and Plaintiff Colony Insurance Co.'s
("Colony") Motion for Summary Judgment (ECF No. 38). Plaintiff Colony was the excess
insurance carrier and Defendant Colorado the primary insurance carrier for All Temp Air
Conditioning and Heating, Inc. ("All Temp") from September 13, 2006 until September 13, 2007.
On May 13, 2007, All Temp employee Jack Hodges was involved in a vehicle accident while
driving an All Temp vehicle, striking another vehicle owned by Jose Bustillos, causing damage to
both vehicles. As a result of this accident, Mr. Bustillos brought suit against All Temp, its owner
Davy Ingram, and Jack Hodges, which eventually resulted in a $1.95 million settlement in late
2010. Defendant Colorado paid its policy limit of $996,626.19, and Plaintiff Colony paid the
remaining amount of $953,373.81. Plaintiff Colony brings the instant suit in equity seeking costs
incurred in relation to the Bustillos action. For the reasons stated below, Defendant's Motion for
Summary Judgment (ECF No. 36) is granted in part and denied in part. Plaintiff's Motion for
Summary Judgment (ECF No. 38) is denied.

## II.      BACKGROUND

### A.  Undisputed Facts

The Court finds the following facts to be undisputed for the purposes of these motions. These facts are based on the parties' statements of undisputed facts and the exhibits submitted by the parties.

All Temp Air Conditioning & Heating, Inc. ("All Temp") purchased a "Commercial Package" insurance policy that included commercial auto insurance coverage from Colorado ("the Colorado Policy"), covering the policy period from September 13, 2006 to September 13, 2007. The Colorado Policy provided liability insurance for damages because of bodily injury or property damage caused by an accident and resulting from the ownership, maintenance, or use of a covered automobile, with a liability limit of $1 million for any one accident or loss.

All Temp also purchased Commercial Liability Umbrella insurance from Colony ("the Colony Policy"), covering the policy period from September 13, 2006 to September 13, 2007. The Colony Policy provided excess liability insurance for the "ultimate net loss" to the insured for damages because of bodily injury or property damage caused by an occurrence; occurrence was defined to include an "accident"; the Colony Policy had a liability limit of $1 million for each occurrence.

#### 1.  May 13, 2007 Accident

An All Temp employee, Jack Hodges, was involved in a vehicle accident in Las Vegas on Sunday, May 13, 2007 at approximately 2:30 pm while off-duty. He was driving a red Chevy truck owned by All Temp and struck a vehicle owned by Jose Bustillos, causing damage to both vehicles. Hodges did not have All Temp's permission to drive the truck on that day.

On May 13, 2007, Mr. Hodges persuaded a PepBoys auto repair shop to release to him the All Temp company truck, belonging to All Temp's owner Davy Ingram, which was in the shop for brake repairs. Hodges had reported the truck's brake problems to All Temp the day before, on May 12, 2007, after which the truck was towed to the repair shop.

On May 13, 2007 Mr. Hodges was involved in two other vehicle accidents during the 24-hour period before the Bustillos accident, while driving a different All Temp truck off-duty.

1      *2.   Pre-Litigation Events And Pre-Lawsuit Offers*

2            As early as July 25, 2007, the Colorado third-party property claims adjuster concluded that

3      All Temp employee Hodges was at fault for the accident.

4            Mr. Bustillos' attorney made contact with Colorado on his bodily injury claim by mid-July

5      2007.

6            By October 29, 2007, Mr. Bustillos' counsel was advised the Colorado policy limits were

7      $1.0 million, reduced by payment for the property damage.

8            All Temp employee Hodges stated that the brakes on the All Temp truck had failed, as he

9      had told the investigating officer at the accident scene.

10           Colorado representatives attempted to contact Mr. Bustillos' counsel between February 12,

11     2008 and April 4, 2008.

12           Prior to filing a lawsuit for the underlying accident, counsel for Mr. Bustillos presented a

13     settlement offer in 2009 seeking payment of the one million dollar policy limits on the Colorado

14     Casualty Policy. The offer was made on March 4, 2009 (a 30-day time limited demand before the

15     lawsuit was filed). Colorado rejected this offer. Colorado Casualty did not notify Colony, as the

16     excess carrier, of the March 2009 demand.

17           *3.   Lawsuit*

18           Mr. Bustillos filed a lawsuit naming Jack Hodges as well as All Temp and its owner, Davy

19     Ingram, as defendants on April 24, 2009. The original claims were for respondeat superior,

20     negligent maintenance, negligent entrustment, negligence per se, and loss of consortium.

21           On May 19, 2010, Bustillos filed a second amended complaint that included the same

22     claims except negligence per se, and added a claim for negligence and negligent hiring, training,

23     retention and supervision.

24           On June 30, 2009, Colony was put on notice of the lawsuit. Colony was told that a demand

25     for its primary limits had already been made.

26           On August 20, 2009, Colony instructed through defense counsel that the claim needed to

27     be immediately resolved within Colorado's policy limits.

28

1    On September 24, 2009, Bustillos made a second settlement offer at the one million dollar

2    policy limit. Colony rejected this offer.

3    In late 2010, Bustillos sent a third settlement demand for $1.95 Million. Colorado accepted

4    this offer and contributed the remainder of its policy limits ($996,626.19). Colony paid the

5    remaining amount of $953,373.81.

6    As part of the settlement, Mr. Bustillos and his wife agreed to release all claims the

7    plaintiffs had against the defendants, including Dave Ingram, All Temp, and its affiliate Senior

8    Services and to dismiss with prejudice the plaintiffs' claims.

9

10    B.  **Disputed facts**

11    The following facts remain in dispute:

12    Colorado disputes the allegation that it did not investigate the accident.

13    Colorado disputes that it reversed its position on liability after two years.

14    Colorado disputes that it knew of Bustillos' disk herniation and his expected back surgery

15    by March 2009.

16    Colorado disputes that it failed to engage in any settlement negotiations at any time.

17    Colorado disputes that it failed to make an offer before it was too late to settle within

18    primary limits.

19

20    **III.    PROCEDURAL HISTORY**

21    Plaintiff Colony filed its Complaint against Defendants on October 2, 2012. ECF No. 1.

22    On March 12, 2014, Defendant Colorado and Plaintiff Colony filed a Motion for Summary

23    Judgment. ECF Nos. 36, 38.

24

25    **IV.    LEGAL STANDARD**

26    Summary judgment is appropriate when the pleadings, depositions, answers to

27    interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

28    genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

- 4 -

1   Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering

2   the propriety of summary judgment, the court views all facts and draws all inferences in the light

3   most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir.

4   2014). If the movant has carried its burden, the non-moving party "must do more than simply show

5   that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a

6   whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

7   issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation

8   marks omitted).

9

10  **V.      DISCUSSION**

11          Plaintiff argues that it is entitled to summary judgment on its two claims of equitable

12  subrogation and contractual subrogation. It argues that (1) two policy limits demands obligated

13  Colorado to consider the interests of All Temp and negotiate a settlement; (2) All Temp's liability

14  for Plaintiff's injuries was highly probable; (3) the amount of damages potentially recoverable

15  exceeded the policy limits; (4) All Temp's potential exposure was nearly equal to Colorado's

16  policy limits; (5) Colorado did almost no investigation until more than two years after the accident;

17  (6) Colorado made no attempt to settle after rejecting both policy limits demands; and (7) Colony

18  is equitably subrogated to All Temp's breach of the covenant of good faith and fair dealing against

19  Colorado.

20          Defendant argues that the Plaintiff does not have a valid basis under existing Nevada Law

21  for    its    claims    for    "equitable    subrogation/reimbursement"    and    "contractual

22  subrogation/reimbursement." ECF No. 36 at 8. Specifically, Defendant argues that: (1) Nevada

23  does not currently recognize a claim by an excess carrier against a primary carrier for equitable

24  subrogation; and (2) Nevada also does not currently recognize a claim by an excess carrier against

25  a primary carrier for contractual subrogation. Id. at 8-11. The Court will address these arguments

26  in the discussion below.

27          **A.  Equitable Subrogation**

28          The Nevada Supreme Court has held that equitable subrogation is "an equitable remedy

1     that requires the court to balance the equities based on the facts and circumstances of each

2     particular case. Subrogation's purpose is to 'grant an equitable result between the parties.' This

3     court has expressly stated that district courts have full discretion to fashion and grant equitable

4     remedies." Am. Sterling Bank v. Johnny Mgmt. LV, Inc., 245 P.3d 535, 538 (Nev. 2010) (internal

5     citation omitted). See also AT & T Technologies, Inc. v. Reid, 855 P.2d 533, 535 (Nev. 1993)

6     ("Generally, subrogation is an equitable doctrine created to 'accomplish what is just and fair as

7     between the parties.' It arises when one party has been compelled to satisfy an obligation that is

8     ultimately determined to be the obligation of another. Equitable subrogation exists independently

9     of any contractual relation between the parties." (internal citations omitted)).

10          The United States Supreme Court has stated the following regarding equitable subrogation:

11    "Congress has seen fit not to anticipate by specific rules solution of problems that inevitably arise

12    in national bank liquidations. Instead, it chose achievement of a 'just and equal distribution' of an

13    insolvent bank's assets through the operation of familiar equitable doctrines evolved by the courts.

14    Among the oldest of these doctrines is the rule of subrogation whereby 'one who has been

15    compelled to pay a debt which ought to have been paid by another is entitled to exercise all the

16    remedies which the creditor possessed against that other'." Am. Sur. Co. of New York v.

17    Bethlehem Nat. Bank of Bethlehem, Pa., 314 U.S. 314, 316-17 (1941) (internal citations omitted);

18    See also Laffranchini v. Clark, 153 P. 250, 252-53 (Nev. 1915) (internal quotations and citations

19    omitted) ("The right of subrogation, or of equitable assignment, is not founded upon contract alone,

20    nor upon the absence of contract, but is founded upon the facts and circumstances of the particular

21    case, and upon principles of natural justice; and generally, where it is equitable that a person

22    furnishing money to pay a debt should be substituted for the creditor, or in place of the creditor,

23    such person will be so substituted.").

24          While it appears that the question of equitable subrogation's application in the current

25    context—between insurance carriers and excess carriers—has not yet been addressed by the

26    Nevada Supreme Court, the doctrine has been applied in other areas of law. For example, in the

27    context of mortgages, "[e]quitable subrogation interrupts this procedure and permits a person who

28    pays off an encumbrance to assume the same priority position as the holder of the previous

1    encumbrance." Am Sterling Bank., 245 P.3d at 539 (internal citations omitted). Similarly, "[i]n

2    the context of worker's compensation, absent a statutory subrogation right, the non-negligent

3    employer who has been required to pay worker's compensation benefits to its employee for injuries

4    caused by a third-party's negligence has a common-law right of subrogation to the employee's

5    claim against the third-party tortfeasor." AT & T Technologies, Inc., 855 P.2d at 535.

6           Where the doctrine of equitable subrogation is precluded by statute, such as in the

7    mechanic's lien context, courts in Nevada do not apply the doctrine. See In re Fontainebleau Las

8    Vegas Holdings, 289 P.3d 1199, 1211 (Nev. 2012) ("Despite the plain and unambiguous language

9    of the [mechanic's lien] statute, Wilmington Trust requests that this court apply equitable

10   subrogation."). Further, "[e]quitable subrogation exists independently of any contractual relation

11   between the parties." AT & T Technologies, Inc., 855 P.2d at 535 (Nev. 1993) (internal citations

12   omitted).

13          Therefore, the Court finds that equitable subordination is a mechanism for equitable relief

14   where contractual subrogation is unavailable, or where not precluded by a statutory scheme. This

15   is consistent with the "double recovery doctrine," where additional, or "double" recovery under

16   the statutory scheme and/or contractual subrogation is prohibited. See Elyousef v. O'Reilly &

17   Ferrario, LLC, 245 P.3d 547, 549 (Nev. 2010). The Court is unpersuaded by Defendant's argument

18   that Nevada does not have a basis for equitable subrogation in the current context of excess carriers

19   against primary insurance carriers.

20               *1.  Recent Application in the District of Nevada*

21          In fact, District Courts of Nevada have denied a motion to dismiss an equitable subrogation

22   claim, applying the eight-factor test set forth in the Fireman's Fund case in California. See N. Am.

23   Specialty Ins. Co. v. Nat'l Fire & Marine Ins. Co., No. 2:10-CV-01859-GMN, 2013 WL 1332205,

24   at *3 (D. Nev. Apr. 2, 2013) ("Specifically, Plaintiffs allege that Defendant also insured the named

25   defendants in the underlying construction defect lawsuits and as such, was responsible for the costs

26   associated with the underlying construction defect lawsuits. Plaintiffs further allege that the

27   payments they made for settlement and defense of the underlying construction defect lawsuits were

28

1    actually Defendant's responsibility, thus causing damage to Plaintiffs.") (citing Fireman's Fund

2    Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1290 (Cal. Ct. App.1998)).

3           The essential elements of an insurer's cause of action for equitable subrogation are as

4    follows: (1) the insured suffered a loss for which the defendant is liable, either as the wrongdoer

5    whose act or omission caused the loss or because the defendant is legally responsible to the insured

6    for the loss caused by the wrongdoer; (2) the claimed loss was one for which the insurer was not

7    primarily liable; (3) the insurer has compensated the insured in whole or in part for the same loss

8    for which the defendant is primarily liable; (4) the insurer has paid the claim of its insured to

9    protect its own interest and not as a volunteer; (5) the insured has an existing, assignable cause of

10   action against the defendant that the insured could have asserted for its own benefit had it not been

11   compensated for its loss by the insurer; (6) the insurer has suffered damages caused by the act or

12   omission upon which the liability of the defendant depends;  (7) justice requires that the loss be

13   entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the

14   insurer; and  (8) the insurer's damages are in a liquidated sum, generally the amount paid to the

15   insured. Fireman's Fund Ins. Co., 65 Cal. App. 4th at 1292.

16          In another District of Nevada case, the Court declined to extend equitable subrogation to

17   prevent double recovery. See Liberty Mut. Ins. Grp. v. Panelized Structures, Inc., No. 2:10-CV-

18   01951-MMD, 2013 WL 1249592, at *5 (D. Nev. Mar. 25, 2013), appeal dismissed (Sept. 24, 2014)

19   ("Plaintiff has already prevailed on a suit for statutory subrogation. Plaintiff's theory would allow

20   them to collect double damages, which certainly does not accomplish what is just and fair as

21   between the parties.").

22                    *2.   Requirement of Judgment Prior to Equitable Subrogation*

23          Defendant further argues that laws of other states such as California "requires a judgment

24   against the insured as a pre-condition to an excess carrier's claim for equitable subrogation." ECF

25   No. 36 at 7. While it is true that some courts have required there be an excess judgment against

26   the insured for a claim of equitable subrogation, the rationale behind subrogation and the factors

27   considered in cases such as Fireman suggest that a lack of excess judgment is not a per se bar. In

28   fact, courts in California (to which the Defendant cites) appear to be in disagreement as to whether

1  judgment is necessary to invoke equitable subrogation. See RLI Ins. Co. v. CNA Cas. of Cal., 141

2  Cal. App. 4th 75, 82 (Cal. Ct. App. 2006) ("Without an excess judgment, the primary insurer's

3  refusal to settle is not actionable"); cf. Fortman v. Safeco Ins. Co., 221 Cal. App. 3d 1394, 1399-

4  400 (Cal. Ct. App. 1990) ("the assertion that a settling excess insurer cannot recover in excess of

5  policy limits from a primary insurer guilty of bad faith refusal to settle is not well founded. We

6  entertain no doubt that an excess insurer which has settled and discharged the insured's liability

7  may recover from the primary insurer an amount in excess of the primary insurer's policy limits if

8  the excess insurer can prove the primary insurer's unreasonable refusal to settle within its policy

9  limits resulted in loss to the excess insurer in an amount in excess of the policy limits of the primary

10  insurer it would not otherwise have had.")

11  Therefore, this Court does not find that the lack of an excess judgment is a de facto bar to

12  an equitable subrogation claim and is unpersuaded by Defendant's argument. Consequently, the

13  Court DENIES Defendant's Motion for Summary Judgment (ECF No. 36) as to Plaintiff's

14  equitable subrogation claim.

15  However, the Court finds that sufficient disputes regarding material facts exist such that

16  Plaintiff's Motion for Summary Judgment must also be denied.  The Court specifically finds that

17  disputes as to various material facts—namely as to whether Defendant Colorado investigated the

18  accident, reversed its position on liability, knew of Bustillos' disk herniation and his expected back

19  surgery, engaged in any settlement negotiations, or whether it failed to make an offer before it was

20  too late to settle within primary limits--persist. Therefore the Court DENIES Plaintiff's Motion for

21  Summary Judgment (ECF No. 38).

22

23  **B.  Contractual Subrogation**

24  In the alternative, the Plaintiff asks this Court to find a claim for contractual subrogation.

25  Plaintiff provides the following clause in its insurance policy with All Temp, which states: "9.

26  Transfer Of Rights Of Recovery Against Others To Us. If the insured has rights to recover all or

27  part of any payment we have made under this Coverage Part, those rights are transferred to us. The

28

- 9 -

1    insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or

2    transfer those rights to us and help us enforce them." ECF No. 38, Ex. 2.

3            Subrogation "can also arise out of the contractual language of the insurance policy

4    (conventional subrogation)." Pac. Gas & Elec. Co. v. Superior Court, 144 Cal. App. 4th 19, 23,

5    (Cal. App. Ct. 2006). However, "[t]he subrogation provisions of most insurance contracts typically

6    are general and add nothing to the rights of subrogation that arise as a matter of law." Progressive

7    W. Ins. Co. v. Yolo Cnty. Superior Court, 135 Cal. App. 4th 263, 272 (Cal. App. Ct. 2005)

8            As the Defendant argues, and the Court agrees, in the insurance context, contractual

9    subrogation is generally applied not by an excess insurer against a primary insurer, but between

10   an insurer and a *third party tortfeasor*. See 21st Century Ins. Co. v. Superior Court, 213 P.3d 972,

11   976 (Cal. 2009). ("Med-pay insurers must seek recovery for personal injury claims through

12   contractual reimbursement rights against their insureds, because they are not allowed to assert

13   subrogation claims directly against third party tortfeasors. The rule is based on the premise that

14   personal injury claims are not assignable, and therefore a med-pay insurer generally has no right

15   to sue the tortfeasor directly and has no standing to intervene."). This is because "[t]he subrogation

16   provisions of most insurance contracts typically are general and add nothing to the rights of

17   subrogation that arise as a matter of law." Progressive W. Ins. Co. v. Yolo Cnty. Superior Court,

18   135 Cal. App. 4th 263, 272, 37 Cal. Rptr. 3d 434, 441 (2005). See also State Farm Gen. Ins. Co.

19   v. Wells Fargo Bank, N.A., 143 Cal. App. 4th 1098, 1106 (Cal. App. Ct. 2006) ("For example, the

20   standard form fire insurance policy, contained in Insurance Code section 2071, includes a

21   provision for subrogation, with the effect that the insurer may require from the insured an

22   assignment of all rights of recovery against any loss to the extent that payment is made in full by

23   the insurer.").

24           In addition, the Nevada Supreme Court has held that contractual subrogation in the context

25   of insurers and insureds may contravene public policy: "[I]t violates public policy to allow an

26   insurer to collect a premium for certain coverage and then allow the insurer to subrogate its interest

27   and deny the insured his benefits. Precluding the subrogation of the insurer does not result in a

28   double recovery for the insured because the insured is merely receiving the benefits for which he

1    has already paid. Allowing subrogation deprives the insured of the coverage for which he had paid

2    and results in a windfall recovery for the insurer." <u>Maxwell v. Allstate Ins. Companies</u>, 728 P.2d

3    812, 815 (Nev. 1986).

4          While in this case, the public policy doctrine is weaker given that an excess insurer is suing

5    a primary insurer, the Court nevertheless agrees that allowing for contractual subrogation—as

6    opposed to equitable subrogation—may provide for windfalls in scenarios in the insurance context.

7    While this Court is not holding that contractual subrogation can never occur in the insurance

8    context, it does find that in this case and its related circumstances a contractual subrogation claim

9    cannot be maintained.

10          For the reasons stated above, the Court GRANTS Defendant's Motion for Summary

11    Judgment as to the contractual subrogation claim.

12

13    **V. CONCLUSION**

14          **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 38) is

15    DENIED.

16          **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No.

17    36) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to the

18    contractual subrogation claim, and DENIED as to the equitable subrogation claim.

19

20          **DATED**: January 22, 2016.

21          ___                           _____

22                                         **RICHARD F. BOULWARE, II**
                                          **United States District Judge**

23

24

25

26

27

28