**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| COLONY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>COLORADO CASUALTY INSURANCE COMPANY; DOES 1-10 and ROE CORPORATIONS 1-10, inclusive,<br><br>Defendants. | Case No. 2:12-cv-01727-RFB-NJK<br><br>**ORDER**<br><br>**Findings of Fact and Conclusions of Law After Court Trial** |

**I.     INTRODUCTION**

This is a suit in equity brought by an excess insurance carrier against a primary insurance carrier for settlement payments related to a motor vehicle accident. Plaintiff Colony was the excess insurance carrier and Defendant Colorado the primary insurance carrier for All Temp Air Conditioning and Heating, Inc. from September 13, 2006 until September 13, 2007. On May 13, 2007, All Temp employee Jack Hodges was involved in a motor vehicle accident while driving an All Temp vehicle, striking another vehicle owned by Jose Bustillos, causing damage to both vehicles and physical injuries to Bustillos. As a result of this accident, Bustillos brought suit against All Temp, its owner Davy Ingram, and Jack Hodges, which eventually resulted in a $1.95 million settlement in early 2011. Defendant Colorado paid its policy limit of $996,626.19, and Plaintiff Colony paid the remaining amount of $953,373.81. Plaintiff Colony brings the instant suit in equity seeking costs incurred in relation to the Bustillos action. The Court held a bench trial in this case on January 25-27, 2017 and April 3-4, 2017. The Court rules in favor of the Plaintiff based on the following findings of fact and conclusions of law.

## II. BACKGROUND

The parties agree that All Temp purchased commercial auto insurance coverage from Defendant Colorado with a $1 million liability limit and commercial liability umbrella insurance coverage from Plaintiff Colony with a $1 million liability limit, covering the policy period from September 13, 2006 to September 13, 2007. They agree that All Temp employee Jack Hodges was involved in a motor vehicle accident with Jose Bustillos on May 13, 2007, while driving a vehicle owned by All Temp. They agree that Defendant Colorado turned down two offers to settle Bustillos' claim within Colorado's $1 million policy limit, before eventually agreeing to settle the claim for $1.95 million.

The parties disagree as to whether Defendant Colorado conducted a proper investigation of Bustillos' claim, whether Defendant Colorado acted reasonably in attempting to settle the claim, and whether Defendant Colorado acted in bad faith by failing to settle the claim within its policy limit.

## III. JURISDICTION AND VENUE

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000. Venue is proper because the incident from which this dispute arose occurred within Clark County, Nevada.

## IV. FINDINGS OF FACT

Federal Rule of Civil Procedure 52(a)(1) requires the Court to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). The court must make findings sufficient to indicate the factual basis for its ultimate conclusion. Kelley v. Everglades Drainage District, 319 U.S. 415, 422 (1943). The findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." United States v. Alpine Land & Reservoir Co., 697 F.2d 851, 856 (9th Cir.), cert. denied, 464 U.S. 863 (1983) (citations omitted).

Accordingly, following the bench trial and having reviewed all of the evidence and observed all of the witnesses, the Court makes the following findings of fact in this case.

1. All Temp Air Conditioning & Heating, Inc. ("All Temp") purchased a "Commercial Package" insurance policy that included commercial auto insurance coverage from Colorado ("the Colorado Policy"), covering the policy period from September 13, 2006 to September 13, 2007. The Colorado Policy provided liability insurance for damages because of bodily injury or property damage caused by an accident and resulting from the ownership, maintenance, or use of a covered automobile, with a liability limit of $1 million for any one accident or loss.

2. All Temp also purchased Commercial Liability Umbrella insurance from Colony ("the Colony Policy"), covering the policy period from September 13, 2006 to September 13, 2007. The Colony Policy provided excess liability insurance for the "ultimate net loss" to the insured for damages because of bodily injury or property damage caused by an occurrence; occurrence was defined to include an "accident"; the Colony Policy had a liability limit of $1 million for each occurrence.

3. An All Temp employee, Jack Hodges ("Hodges"), was involved in a vehicle accident in Las Vegas on Sunday, May 13, 2007 at approximately 2:30 pm. He was driving a red Chevy truck owned by All Temp and struck a vehicle owned by Jose Bustillos ("Bustillos"), causing damage to both vehicles and physical injuries to Bustillos. He was driving in the course and scope of his employment and was authorized to be driving the vehicle at the time of the accident.

4. Hodges was involved in two other motor vehicle accidents during the 24-hour period before the Bustillos accident, while driving vehicles owned by All Temp. Colorado was informed of these other accidents within a week of May 13, 2007.

5. Colorado paid All Temp for its totaled truck from the May 13, 2007 accident, took title to it, and then sold the truck for salvage in the fall of 2007, failing to preserve it as evidence.

6. As of June 7, 2007, Colorado had determined that it had no subrogation rights against

Hodges' personal automobile insurance because he was driving the All Temp vehicle with permissive use.

7. Colorado paid Bustillos' property damage claim on July 25, 2007. Colorado paid this claim because Colorado believed that All Temp's liability for the accident was reasonably clear by this time.

8. Colorado received no new information after settling Bustillos' property damage claim that would have reasonably led it to challenge All Temp's liability.

9. On July 25, 2007, Colorado transferred Bustillos' claim handling to its casualty department for the purpose of dealing with Bustillos' bodily injury claim.

10. On August 22, 2007, counsel for Bustillos informed Colorado that an MRI had been conducted on Bustillos that showed disk herniation at L5-S1 and that Bustillos was still in a great deal of pain. Counsel for Bustillos faxed Colorado a copy of the MRI.

11. On September 5, 2007, Colorado's claims adjuster reviewed the facts of the claim/accident and advised Colorado to settle the bodily injury claim because liability was clearly against Colorado.

12. As of October 31, 2007, Colorado was aware that Bustillos was receiving trigger point injections for his back injury.

13. As of May 5, 2008, Colorado was aware that Bustillos needed back surgery for his herniated disk, that he continued to experience severe pain, that there would be future medical expenses, and that there was a strong possibility of permanent impairment. Colorado was also aware that Bustillos had to delay surgery because he was the sole source of financial support/income for his family and would be out of work for an unspecified amount of time after the surgery.

14. On July 1, 2008, the Colorado claims adjuster again reviewed the facts of the claim and again reiterated internally that there was clear liability for Bustillos' personal injury claim.

15. As of December 30, 2008, Colorado was aware that Bustillos was having a pre-surgical operation in January of 2009 to assess the possibility of future surgery and that he was still experiencing severe pain.

16. On March 4, 2009, counsel for Bustillos sent Colorado an offer to settle Bustillos' claim for the Colorado policy limit.

17. On March 20, 2009, Colorado called and spoke to Davy Ingram ("Ingram"), the owner of All Temp who was present at the scene of the accident, for the first time. During that call, Colorado requested a copy of the police report from the underlying accident for the first time. Colorado informed Ingram of the policy limit demand and advised him that they were going to settle the claim within the policy limit of the claim. Colorado did not request any other employment records from Ingram at that time. Ingram would have cooperated fully with Colorado had they requested any other information from him. Had Colony representatives asked Ingram about Hodges he would have told them information from which they would have understood that: a.) Hodges had a substance abuse problem that existed at the time of the accident, b.) Hodges' substance abuse problem would have and almost certainly did impair his driving at the time of the accident, c.) Ingram was fully aware of Hodges' substance abuse problem and prior accident history but still authorized him to drive vehicles for All Temp, and d.) Ingram had a written drug policy regarding testing drivers that Ingram intentionally was not following. Ingram would have provided all of this information even on the day after the accident had he only been asked by Colorado investigators/adjusters. Ingram was not asked these liability-related questions that would have led to the more detailed information noted above because Colorado representatives/employees already understood and knew that All Temp was liable.

18. On March 27, 2009, Colorado informed counsel for Bustillos that based on the documentation Colorado had at that time "this is not a policy limits case," but Colorado did not dispute liability.

19. Colorado did not provide a counteroffer to Bustillos at that time.

20. On April 24, 2009, Bustillos and his wife, Zulema Beltran ("Beltran"), timely filed a complaint against Hodges, Ingram, and All Temp, alleging that Hodges was acting in the course and scope of his employment with All Temp at the time of the accident.

21. On May 11, 2009, Colorado was informed by counsel for Bustillos that Bustillos had an

emergency spinal fusion surgery that day and he was not doing well. During that same call, the Colorado claims adjuster suggested to counsel for Bustillos that Colorado was still in need of certain medical billing records but assured Bustillos' counsel that the failure to settle the claim had nothing to do with causation of the injury to Bustillos, as Colorado had accepted liability and was not disputing it.

22. On May 19, 2009, Colorado became aware of the complaint filed by Bustillos and Beltran.

23. Colony was placed on notice of Bustillos' claim for the first time in July of 2009.

24. On August 20, 2009, Colony demanded that Colorado immediately resolve Bustillos' claim within Colorado's policy limit or that Colorado provide Colony with documentation explaining why they had not resolved the claim. That same day, Colony sent an email to Colorado explaining why Colony felt that Colorado's actions and inactions in handling the claim were evidence of bad faith.

25. On September 24, 2009, Bustillos' attorney served Ingram and All Temp with an Offer of Judgment in the amount of $999,999.99, which was only good for ten days. As Colorado had, pursuant to its authority under the policy, taken over control of the litigation and settlement of the claim, it was aware of the offer. Colorado intentionally let the offer lapse even though it knew liability against All Temp was clear and that it would have to pay under the policy.

26. At the time of this offer, Colorado was aware that Bustillos had already incurred approximately $300,000 in medical expenses, that he was continuing to undergo medical treatment, that he had lost wages as a result of his physical injuries, that he was the sole provider for his family, and that it was quite likely that he would be permanently disabled.

27. Colorado was also aware that Hodges had reported to All Temp that he suffered from chronic fatigue syndrome and that he took pain medication, that Hodges had been involved in prior motor vehicle accidents while driving All Temp vehicles, and that Hodges had subsequently passed away.

28. At the time that Colorado let the Offer of Judgment lapse, Colorado understood from its experience in the industry that the case had a settlement value of at least the Colorado

policy limit and likely higher and that the settlement value would continue to increase well above the Colorado policy limit as the case dragged on. Colorado did not inform Ingram of any of the information that it had obtained or considered regarding the value of the claim.

29. In October of 2009, Colorado retained new counsel and decided to dispute liability for All Temp and not to defend Hodges in the Bustillos suit. The decision to contest liability was not reasonable or based upon any new information. There was in fact no additional information that Colorado would have discovered that would have decreased the certainty of All Temp's liability had Colorado engaged in further substantive investigation on liability.

30. From July 1, 2008 until January 31, 2011, Colorado did not obtain information that decreased the certainty of All Temp's liability. It did not obtain any information that supported the value of the claim being less than the previous offers. It did not diligently or reasonably engage in further investigation; and, even if it had, such investigation would have only led to greater certainty as to All Temp's liability.

31. On January 31, 2011, Bustillos sent Colorado an offer to settle the case for $1.95 million. Colorado's new counsel strongly recommended that Colorado accept the $1.95 million settlement offer.

32. Upon learning of the January 31, 2011 demand for settlement, by letter dated February 17, 2011, counsel for Colony demanded that Colorado pay the entire settlement amount of $1,950,000, but Colorado refused.

33. Bustillos' last offer of settlement was accepted by Colorado, and settlement of the Bustillos action was finalized on March 15, 2011. Colorado contributed its policy limit (minus the property damage settlement amount it had previously paid) and Colony contributed $953,373.00, for a total settlement of $1,950,000.

34. At the time that Colorado changed its position and began to dispute All Temp's liability in 2009, it had not received any new information about the circumstances of the claim that would have reasonably led it reevaluate the issue of liability.

35. The Court does not find Colorado's explanations for its negotiation, settlement and litigation conduct to be credible.
36. Colony did not have the authority under the respective policies and contracts to compel Colorado to settle the claim for Colorado's policy limit in 2009.

V. **CONCLUSIONS OF LAW**

A. **Equitable Subrogation**

"Generally, subrogation is an equitable doctrine created to 'accomplish what is just and fair as between the parties.' It arises when one party has been compelled to satisfy an obligation that is ultimately determined to be the obligation of another. Equitable subrogation exists independently of any contractual relation between the parties." AT & T Technologies, Inc. v. Reid, 855 P.2d 533, 535 (Nev. 1993) (internal citations omitted). Although the Nevada Supreme Court has not yet recognized the doctrine of equitable subrogation in this context – between primary and excess insurance carriers – it has applied the doctrine to other areas of law. For example, in the context of mortgages, "[e]quitable subrogation interrupts this procedure and permits a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." Am. Sterling Bank v. Johnny Mgmt. LV, Inc., 245 P.3d 535, 539 (Nev. 2010) (internal citations omitted). Similarly, "[i]n the context of worker's compensation, absent a statutory subrogation right, the non-negligent employer who has been required to pay worker's compensation benefits to its employee for injuries caused by a third-party's negligence has a common-law right of subrogation to the employee's claim against the third-party tortfeasor." AT & T Technologies, Inc., 855 P.2d at 535. Based on these cases, this Court previously held that in Nevada, equitable subrogation is available as a claim for equitable relief where contractual subrogation is unavailable, and where not precluded by a statutory scheme. The Court will therefore consider the Plaintiff's claim of equitable subrogation in this case.

While the Defendant has argued for a rigid application of "elements" to a claim for equitable subrogation, the Court rejects this approach as contrary to the essential equitable nature of such a claim. As the Supreme Court explained over a century ago: "The right of subrogation is

not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." Memphis & L. R. R. Co. v. Dow, 120 U.S. 287, 301-02 (1887). This foundational understanding of the nature of the claim is consistent with Nevada's long-standing understanding of an equitable subrogation claim. See, e.g., Laffranchini v. Clark, 153 P. 250, 252-53 (Nev. 1915) (internal quotations and citations omitted) ("The right of subrogation, or of equitable assignment, is not founded upon contract alone, nor upon the absence of contract, but is founded upon the facts and circumstances of the particular case, and upon principles of natural justice; and generally, where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor, or in place of the creditor, such person will be so substituted."). The Court finds that the only principle or element limiting this equitable claim is that the "the insurer can take nothing by subrogation but the rights of the assured." Phoenix Ins. Co. v. Erie & Western Transp. Co., 117 U.S. 312, 321 (1886).

The Court finds that there are several factors that may be but are not required to be considered for an excess insurer's cause of action for equitable subrogation against a primary insurer: (1) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (2) the claimed loss was one for which the insurer was not primarily liable; (3) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (4) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (5) the insured has an existing, assignable cause of action against the defendant that the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (6) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (7) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (8) the insurer's damages are in a liquidated sum, generally the amount paid to the insured. Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1292 (Cal. Ct. App. 1998). Again, as the claim is fundamentally an equitable claim, the Court finds that its

consideration of these factors must be guided by equity and not a rigid prescribed legal inquiry—except for the one requirement, as noted above, that the excess insurer has no greater rights and no greater entitlement to a remedy than the insured would have against the primary carrier for the particular loss or purported damages.

Considering the factors noted in equity, the Court makes the following legal and factual findings regarding the Plaintiff's equitable subrogation claim. In this case, the insured – All Temp – suffered a loss – Bustillos' personal injury claim – for which Colorado was liable, as the primary insurance carrier. As the policy limit for Colorado's coverage was $1 million, any amount of the settlement above this amount would have been borne by All Temp if it did not have excess policy coverage through Colony. Colony covered the amount of the settlement above the Colorado policy limit—an excess amount for which All Temp would have been legally responsible—by contributing $953,373.00 to the settlement.

Colony did not pay its portion of the settlement voluntarily. Colony first demanded that Colorado pay the entire settlement amount and then reserved the right to seek contribution from Colorado in the future. Had Colony not contributed to the settlement, All Temp would have had to pay out of pocket for the amount over Colorado's policy limit. Colony paid to avoid the damages and costs it would have suffered from a legal claim against it by All Temp if it did not contribute to the settlement of the claim. Colony has suffered damages due to Colorado's bad faith failure to settle the claim, as the ultimate settlement was much higher than it would have been had Colorado settled the claim at the time when liability was clear. Instead, Colorado unreasonably delayed settling the case without cause and did not engage in any additional substantive investigation. Justice requires that Colorado pay for Colony's contribution to the settlement, as it was Colorado's failure to reasonably settle the claim when liability was clear that resulted in the claim not being settled within the policy limit of Colorado's policy for All Temp. Colony's damages are in a liquidated sum, the $953,373.00 that they paid towards the settlement.

The Court also finds Colorado's equitable position to be inferior to that of Colony. Colorado had direct access to the information regarding liability and understood from a review of the case early on that liability was clear. It also knew that the settlement value of the claim at the

time of at least the last offer was within its policy limit and that the value would increase as the litigation dragged on. Colorado nonetheless engaged in unreasonable delay and obfuscation tactics to delay settlement and to conceal its awareness of the ever increasing value of the claim while litigation was ongoing. These tactics misled Ingram and Colony into believing that Colorado was simply seeking to ascertain allegedly unknown but necessary information for settlement of the claim. This was not true.

Finally, the Court finds that All Temp would have had (and asserted) a meritorious bad faith claim against Colorado for the $953,373.00 had Colony not paid it. Colorado acted in bad faith when it failed to settle the claim when liability was clear and when the claim would have settled within Colorado's policy limit. Insurers owe their insured two primary duties: the duty to defend and the duty to indemnify. Allstate v. Miller, 212 P.3d 318, 324 (Nev. 2009). The duty to defend gives the insurer the right to control settlement negotiations and the right to control litigation against the insured. Id. The right to control settlement negotiations creates the duty of good faith and fair dealing during negotiations and the right to control litigation creates the duty to defend the insured from lawsuits within the insurance policy's coverage. Id. at 325. An insurer acts in bad faith during settlement negotiations when they have "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." Am. Excess Ins. Co. v. MGM, 729 P.2d 1352, 1354-55 (Nev. 1986). See also Albert H. Wohlers & Co. v. Bartgis, 969 P.2d 949, 956 (Nev. 1998) ("[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct").

The Court finds that Colorado was acting in bad faith when it failed to reasonably settle Bustillos' personal injury claim within its policy limit when it was clear that All Temp was liable and when the claim would have settled within the policy limit. At a time when liability was clear, Colorado unreasonably failed to settle the claim. It was also clear that at that time, failure to settle the claim would increase the future settlement amount for Bustillos' claim. Colorado had no reasonable basis for contesting liability or delaying settlement at the time when the claim could have been settled within Colorado's policy limit. The evidence thus demonstrates that Colorado acted in bad faith in unreasonably failing to settle Bustillos' claim earlier when liability was clear

and when the settlement amount would have been much less. This bad faith conduct caused damage to All Temp and hence Colony because it resulted in the settlement amount exceeding Colorado's policy limit.

**VI.    JUDGMENT**

The Court finds in favor of the Plaintiffs. The Court awards the Plaintiffs $953,373.00.

**IT IS ORDERED** that the Clerk of Court shall enter judgment for the Plaintiffs and close this case.

**DATED** this 3rd day of July, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**